UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LASHONDA LEDET | CIVIL NO. 20-00209 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LAKE AREA PHYSICIAN SERVICES LLC, CHRISTUS HEALTH, CHRISTUS HEALTH SOUTHWESTERN LOUISIANA, AND CHRISTUS HEALTH NORTH LOUISIANA | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by Lake Area Physician Services, LLC ("Lake Area"), CHRISTUS Health, CHRISTUS Health Southwestern Louisiana, and CHRISTUS Health Northern Louisiana d/b/a CHRISTUS Highland Medical Center (collectively "Defendants"), seeking judgment against the Plaintiff, LaShonda Ledet ("Ledet"), for her hostile work environment, retaliation, and detrimental reliance claims. See Record Document 31. Ledet opposes the Motion. See Record Document 35. After reviewing the evidence and information presented to the Court, the Motion is **GRANTED**.

**FACTAL AND PROCEDURAL BACKGROUND**

Ledet began working for CHRISTUS Southwestern Louisiana on May 14, 2018, as a PRN Radiology Technologist ("Rad Tech"). See Record Documents 31-2 and 35-1 at ¶7. She functioned on an "as needed basis" and an at-will employee. See id. On May 21, 2018, Ledet was placed and began training in the Lake Area clinic in Lake Charles, Louisiana, where she worked with Dr. Lawrence Weber ("Dr. Weber"). See id. at ¶16. Within her first three days at the Lake Area clinic, Dr. Weber made three comments to

1

Ledet that she believed were offensive. The first was during her introduction to Dr. Weber when he stated he had seen the movie "Black Panther." The second and third occurred during an exchange between the two individuals which, according to Ledet, went as follows:

> **Dr. Weber to a patient:** "We have this new big black girl working in our office."
>
> **Dr. Weber to Ledet:** "So what do you want me to call you, Black or African American?"
>
> **Dr. Weber to Ledet in clarification:** "You know, like, you call us cracker and things like that?"

Record Document 31-2 and 35-1 at ¶¶24-26.

On May 23, 2018, Ledet called her supervisor, Lisa Malone ("Malone"), Director of Clinics for the Lake Area clinic, and reported Dr. Weber's comments. Ledet followed up with Malone on May 24 via email. See Record Document 35-3. Malone responded on May 25 and informed Ledet that she spoke with Dr. Weber about the incident, and he was apologetic. See Record Document 31-5, Exhibit 10 at 55. Malone closed by encouraging Ledet to not be "soft skinned because they do speak openly" at the Lake Area clinic and "this was the nature of Dr. Weber." Record Document 31-5, Ex. 10 at 55. On May 26, Ledet travelled to Shreveport, where she originally resided before beginning her work at the Lake Area clinic. While in Shreveport, on May 27, she emailed Malone "requesting an immediate transfer from CHRISTUS Lake Area to Shreveport," because "she [has] no other choice but to return home to Shreveport" after she was humiliated by Dr. Weber. Record Document 31-5, Ex. 10 at 59.

CHRISTUS Health Human Resources became aware of Ledet's complaint against Dr. Weber from Malone on May 29, 2018, after the department discovered an ethics

2

complaint Ledet made against Malone. See Record Documents 31-2 and 35-1 at ¶46. Learning of this information, CHRISTUS Health Human Resources took a number of actions all on May 30, 2018. First, Human Resources terminated Malone for mishandling Ledet's original complaint against Dr. Weber by failing to follow proper reporting protocols. See id. at ¶47. Dr. Weber also received a final warning for his behavior from Jennifer Beal, the Vice President of Physician Integration for CHRISTUS Physician Group, and Dr. Tim Haman, CHRISTUS Southwestern Louisiana's Vice President of Medical Affairs. See id. at ¶49. Next, Christina Detiveaux ("Detiveaux"), Human Resources Business Partner, and Shelly Aguillard ("Aguillard"), Regional Human Resources Director for CHRISTUS Southwest Louisiana, contacted Ledet regarding her request for transfer to Shreveport.[1] They discussed the possibility of a transfer and Ledet made it clear she had no intention of returning to Lake Charles. See Record Documents 31-2 and 35-1 at ¶53.

Aguillard then reached out to the Human Resources Director of CHRISTUS Northern Louisiana, Beth Maddox ("Maddox"), who indicated there were two positions available in Shreveport and connected Aguillard with a recruiter in the Shreveport area. See id. at ¶57. Maddox immediately informed Sarah Douthit ("Douthit"), a recruiter in Shreveport, that Ledet intended to transfer and requested Douthit contact Ledet. See id. at ¶59. Douthit reached out to Ledet that same day and set up an interview for her with the director of the Radiology Department in Shreveport, Daryle Jeane ("Jeane"). See id. at ¶61. Douthit states that she informed Ledet that there would be no guaranteed position in Shreveport and that Ledet would have to apply and interview for each position pursuant

---

[1] The Defendants also offer that Detiveaux and Aguillard discussed the remedial actions taken by CHRISTUS Health in response to Ledet's complaints, however, Ledet disputes whether this topic was discussed in her response to the Defendant's Statement of Undisputed Facts (Record Document 31-2), though she admits it occurred in her own deposition. See Record Document 31-5 at 88:20-89:6.

to the CHRISTUS Health internal transfer policy. See Record Document 31-2 at ¶63. Ledet disputes this statement. Notably, Ledet already submitted applications for the two positions prior to her meeting with Jeane. See Record Document 35-1

On June 1, 2018, Ledet met with Jeane to discuss the x-ray tech positions available in Shreveport at which point, Jeane informed her that he would contact her by the end of the week regarding the positions. See Record Document 35-1 at ¶68. Jeane ultimately hired another candidate to fill the positions. Ledet did not apply for any other positions in Shreveport. Detiveaux called Ledet on June 27, 2018, to inform her she was removed from the payroll since she had not secured a position in Shreveport and declined to return to Lake Charles. See Record Documents 31-2 and 35-1 at ¶74.

Ledet filed the instant suit against the Defendants seeking damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981. She contends that Dr. Weber's comments created a racially hostile work environment which ultimately drove her away from the Lake Area clinic. She also argues that her termination from CHRISTUS Health was in retaliation for her complaints against Dr. Weber. Lastly, she maintains that she suffered injury because she detrimentally relied on the Defendants' promise to place her in a position in Shreveport.[2] The Defendants filed this Motion for Summary Judgment (Record Document 31) seeking judgment in their favor and dismissal of Ledet's suit in its entirety.

---

[2] Initially, Ledet's Complaint included a claim of sexual discrimination. However, the Court dismissed this claim following a Partial Motion to Dismiss (Record Document 5) by the Defendants. See Record Document 9.

**LAW AND ANALYSIS**

1) **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence may affect the outcome of the lawsuit. See Batiste v. Quality Construction & Production LLC, 327 F.Supp.3d. 972, 975 (W.D.La. 2018). A genuine dispute exists if a reasonable jury could find for the nonmoving party. See id.

If the moving party carries its initial burden of informing the court of the basis for its motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact when construing all facts in the light most favorable to the nonmoving party. See Norwegian Bulk Trans. A/S v. Int'l. Marine Terminals Part., 520 F.3d 409, 412 (5th Cir. 2008). A nonmovant cannot defeat summary judgment with "conclusory allegations and unsubstantiated assertions." Mac v. City of Palestine, 333 F.3d 621, 624 n. 7 (5th Cir. 2003). If the nonmoving party cannot "adduce affirmative evidence" to support an essential element of its claim, summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see also Condrey v. SunTrust Bank of Georgia, 431 F.3d. 191, 197 (5th Cir. 2005).

2) **Analysis**

The Defendants' Motion contends Ledet cannot show that Dr. Weber's few remarks created a hostile work environment, nor can she overcome the fact that almost immediate remedial action was taken to address her complaints. They further argue that

Ledet cannot support the conclusion that her termination and inability to secure a new position in Shreveport were discriminatory or retaliatory. Finally, they assert that she cannot establish her claim of detrimental reliance because she was an at-will employee. See Record Document 31-1 at 2.

The Defendants also interpret Ledet's Complaint to include a general claim of race discrimination. They believe Ledet intended to argue that they refused to transfer her and ultimately terminated her employment because of her race. See Record Document 31-1 at 16. In her Opposition, Ledet expands upon these arguments and includes specific new claims of constructive discharge and failure to hire based on her race. See Record Document 35 at 10, 21, 22.

The Court relies on the strong foundation of prior case law which dictates that a claim not raised in the complaint but, rather, is only raised in response to a motion for summary judgment is not properly before the Court. See Jackson v. Gautreaux, 3 F.4th 182, 188 (5th Cir. 2021), Dixon v. Ally Bank, 853 Fed. Appx. 977, 978 (5th Cir. 2021). Furthermore, for claims under Title VII, a plaintiff is required to exhaust her administrative remedies as a prerequisite, otherwise the claim is barred. See Davis v. Fort Bend Cty., 893 F.3d 300, 305 (5th Cir. 2018).

The Court notes that in her original charge filed with the Equal Employment Opportunity Commission ("EEOC"), Ledet makes the following charge of discrimination:

> I believe that I was discriminated against due to my race(black) in that I was subjected to harassment and I also believe that the company refused to transfer me and instead discharged me in retaliation for complaining about the harassment all in violation of Title VII of the Civil Rights Act of 1964, as amended.

6

Record Document 35-5 at 2. The Court interprets this charge to state two claims which are properly before it: 1) hostile work environment based on Dr. Weber's statements and Malone's failure to remedy the situation and 2) retaliation for filing complaints against Dr. Weber. In her Complaint filed in this Court, Ledet reiterates these two claims and adds a third for detrimental reliance under Louisiana state law.[3] It appears Ledet has filed her hostile environment and retaliation claims under both section 1981 and Title VII. The analysis for these claims under each statute is the same and the Court will analyze them together. See Raggs v. Miss. Power & Light Co., 278 F.3d 463 (5th Cir. 2002).

a) Hostile Work Environment

For a hostile work environment claim to survive summary judgment, a plaintiff must establish 1) that she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) that the harassment was based on race; 4) the harassment affected a term or condition of her employment; and 5) that her employer knew or should have known about the harassment and failed to take prompt remedial action. See Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007). A plaintiff need only meet the first four elements if the alleged harassment was conducted by the plaintiff's supervisor. See Burlington Indust. V. Ellerth, 524 U.S. 742, 764-65. (1998).

The Defendants argue that regardless of whether Dr. Weber and Malone are classified as Ledet's supervisors or not, she cannot prove that the alleged harassment affected a term or condition of her employment. See Record Document 31-1 at 11. Ledet

---

[3] Even if Ledet intended to include what the Court refers to as a "general" claim for discrimination based on race, the Court believes the evidence presented by the Defendants fully supports a non-discriminatory reason for why they did not directly place her in Shreveport and ultimately terminated her from employment with CHRISTUS Health. Additionally, beyond those claims Ledet attempts to assert for the first time in her Opposition, she makes no attempt to present any evidence arguing that she was not transferred and fired because of her race.

7

believes she fulfills this element because the comments by Dr. Weber and subsequent response by Malone resulted in her move to Shreveport, constructive discharge, and mental strain. See Record Document 35 at 9.

For harassment to affect a term or condition of employment, it must be clear that the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Johnson v. PRIDE Indus., 7 F.4th 392, 399 (5th Cir. 2021), quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367(1993). The alleged harassment is "severe or pervasive enough" when the environment created is one that an objective, "reasonable person would find hostile or abusive" and is subjectively perceived by the plaintiff as abusive. Long v. Eastfield College, 88, F.3d 309 (5th Cir. 1996). However, "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory charges" capable of surviving summary judgment. Lemon v. Shaw Group, Inc., 2009 U.S. Dist. LEXIS 141389 at *12 (E.D. La. 08/21/09), quoting Turner v. Baylor Richardson Medical Ctr., 476 F.3d 337, 347-48 (5th Cir. 2007) (citations omitted). Courts may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Johnson, 7 F.4th at 400 (citation omitted).

Looking at the totality of Ledet's circumstances, the Court believes that while Ledet may have subjectively perceived Dr. Weber's comments and Malone's emailed response as offensive and humiliating, they did not amount to harassment that an objective, reasonable individual would find severe or pervasive. Ledet reported to the Lake Area

clinic for three days before travelling to Shreveport for the Labor Day holiday. During those three days, she recounts two instances where Dr. Weber made, what she deemed inappropriate, comments to her. However, Ledet herself admits that she initially did not perceive Dr. Weber's comment pertaining to the "Black Panther" movie as racist or offensive. See Record Document 35-1 at 5. Even so, the comment does not equate to a threat or racial slur. Similarly, the second instance in which Dr. Weber asked what she would like to be called does not amount to the "frequent, flagrant, physically threatening, or humiliating" category of examples which warrant a finding in favor of a hostile environment claim. Lemon, 2009 U.S. Dist. LEXIS 141389, at *14. The Court believes Ledet has failed to prove that the harassment was so severe and pervasive that it tainted her workplace. For these reasons, the Court finds summary judgment in favor of the Defendants for the hostile environment claim.

b) Retaliation

The Court must apply the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817(1981), burden shifting analysis to determine whether a plaintiff has established a *prima facie* case of retaliation. A plaintiff must show 1) that she engaged in a protected activity, 2) that an adverse employment action occurred, and 3) that a causal link existed between the protected activity and the adverse action. See Badgerow v. REJ Props., Inc. 974 F.3d 610, 618 (5th Cir. 2020) (citations omitted).  After establishing the three elements, the burden shifts to the opposing party to articulate a non-retaliatory reason for taking the employment action at issue. Should a reason be presented, the plaintiff then has the final task of proving that the reason is a pretext for race discrimination. See id. "[P]retext may be suggested either through evidence of disparate

treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Caldwell v. KHOU-TV, 850 F.3d 237, 242 (5th Cir. 2017) (quoting Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010)) (internal quotation marks omitted).

Ledet argues that the Defendants refused to locate a position for her in Shreveport and ultimately fired her in retaliation for her complaints against Dr. Weber. See Record Document 1 at ¶16. The Court believes, however, that Ledet's claim falls short of fulfilling her burden. She fails to present even a hint of evidence to prove a causal link between her complaints against Dr. Weber and her unfulfilled transfer and ultimate termination. The entirety of Ledet's Opposition, instead, repeats her argument for detrimental reliance, claiming that the Defendants misled her and falsely promised her a new position. Nowhere does she provide affirmative evidence which draws the connection between her protected activity and the Defendants' alleged adverse action.

In fact, as the Defendants point out, the bulk of the evidence undermines her claim. Each of the employees in CHRISTUS Health Human Resources involved in the discussions and initiation of Ledet's potential transfer to Shreveport deny knowing of Ledet's complaints filed against Dr. Weber or Malone at the time she requested the transfer. See Record Documents 31-6 at 23; 31-14 at 18, 45 and 60; 31-15 at 16, 21, and 29; 31-7 at 48. Thus, the Court finds summary judgment in favor of the Defendants on the retaliation claim is warranted.

   c) Detrimental Reliance

Ledet's final claim against the Defendants is one for detrimental reliance pursuant to Louisiana Civil Code article 1967. She alleges that she relied to her detriment on the

promise made by the Defendants to provide her with another job in Shreveport after her requested transfer. See Record Document 1 ¶19. In their Motion, the Defendants argue that Ledet's assertion that she was promised job placement without having to interview or be selected is not supported by the evidence. See Record Document 31-1 at 21.

> Article 1967 states in relevant part:
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. C. art. 1967. To establish detrimental reliance, a party must show "1) a representation by conduct or word; 2) made in such a manner that the promisor should have expected the promise to rely upon it; 3) justifiable reliance; and 4) a change in position to one's detriment because of the reliance." Suire v. Lafayette City-Parish Consol. Gov't., 04-1459 (La. 04/12/05); 907 So.2d 37, 59. "[T]he focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." Audler v. CBC Innovis Inc., 519 F.3d 239, 254 (5th Cir. 2008), quoting Suire, 04-1459 (La. 04/12/05); 907 So.2d at 59.

While there seems to be slight dispute as to what exactly was represented to Ledet by the Defendants regarding her transfer, the Court finds Ledet's claim of detrimental reliance may be dismissed based on the unreasonableness of her reliance. As a matter of law, Louisiana courts have consistently found that reliance on continued employment by an at-will employee is "patently unreasonable," based on the reasoning found in

11

Louisiana Civil Code article 2747 which states, "[a] man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing." La. C.C. Art. 2747; see also Ivory v. M.L. Smith, Jr. LLC, 2015 U.S. Dist. LEXIS 167915 at *1 (W.D. La. 12/15/15), Evans v. Smith, 2014 U.S. Dist. LEXIS 128228 at *17 (W.D. La. 08/05/14), Gad v. Healthsouth Corp., 2006 U.S. Dist. LEXIS 35783 at *12-13 (W.D. La. 05/31/06).

Ledet admits that at all times she was employed as an at-will employee by CHRISTUS Health. See Record Documents 31-2 and 35-1. CHRISTUS Health was under no obligation to ensure her a position once she moved to Shreveport. Thus, Ledet cannot establish the third element of the detrimental reliance claim, justifiable reliance. The Court finds summary judgment in favor of the Defendants is proper for the detrimental reliance claim.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Lake Area Physician Services, LLC ("Lake Area"), CHRISTUS Health, CHRISTUS Health Southwestern Louisiana, and CHRISTUS Health Northern Louisiana d/b/a CHRISTUS Highland Medical Center (Record Document 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that Ledet's claims against these Defendants are **DISMISSED**.

The Clerk of Court is ordered to close this case.

12

A judgment consistent with the foregoing memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 29th day of March, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT